UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


TERRENCE JACKSON,

          Petitioner,

v.                               Case No. 3:19-cv-923-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____


## ORDER

### I. Status

Petitioner Terrence Jackson, an inmate of the Florida penal system,
initiated this action on August 8, 2019, by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Jackson
challenges a 2007 state court (Duval County, Florida) judgment of conviction
for trafficking in cocaine and conspiracy to traffick in controlled substances.
He raises six grounds for relief. See Petition at 8-30. Respondents submitted a
memorandum in opposition to the Petition. See Response (Doc. 8). They also
submitted exhibits. See Docs. 9-1 through 9-5. Jackson filed a brief in reply.

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the
document page numbers assigned by the Court's electronic docketing system.

See Reply (Doc. 10). He also submitted an exhibit. See Doc. 10-1. This action is ripe for review.

## II. Relevant Procedural History

On October 23, 2006, the State of Florida charged Jackson by amended information with trafficking in cocaine (count one) and conspiracy to traffick in controlled substances (count two). Doc. 9-1 at 67-68. On May 16, 2007, a jury found Jackson guilty of counts one and two. Id. at 110-11. On June 21, 2007, the trial court adjudicated Jackson to be a habitual felony offender (HFO) for both counts and sentenced him to concurrent terms of life imprisonment with a fifteen-year mandatory minimum sentence for count one. Id. at 133-35. On July 5, 2007, Jackson filed a notice of appeal. Id. at 141.

During the pendency of his direct appeal, on November 29, 2007, Jackson, through counsel, filed a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), in which he argued his life sentences for strict liability offenses violated due process, and his HFO sentences were illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000). Doc. 9-3 at 286-303. The circuit court denied his Rule 3.800(b)(2) Motion on December 12, 2007. Id. at 306.

2

On November 4, 2008, Jackson, through counsel, filed an initial brief, arguing that: the trial court erred when it denied his motion to suppress evidence (ground one); the trial court fundamentally erred when it instructed the jury on constructive possession (ground two); conspiracy to traffick in cocaine is a nonexistent offense under Florida law (ground three); the trial court's imposition of life sentences for strict liability offenses violated due process (ground four); and the trial court erred when it imposed an HFO sentence (ground five). Id. at 345-98; onlinedocketsdca.flcourts.org, Terrence Jackson v. State of Florida, 1D07-3669 (Fla. 1st DCA). The State filed an answer brief. Docs. 9-3 at 400-29; 9-4 at 1-9. The First DCA affirmed Jackson's convictions and sentences on June 25, 2009, Doc. 9-4 at 11; denied Jackson's motion for rehearing on August 4, 2009, id. at 18; and issued the mandate on August 20, 2009, id. at 20.

On May 19, 2010, Jackson filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Id. at 40-65. In his Rule 3.850 Motion, Jackson alleged counsel was ineffective when he: did not sufficiently object to the search warrant affidavit (ground one); failed to object to the State's violation of a motion in limine (ground two); failed to investigate or subpoena a witness (ground three); did not object to an erroneous jury

3

instruction or request a special jury instruction (ground four); did not sufficiently advise Jackson about his right to testify (ground five); failed to renew his objection to the prosecutor's comment during closing arguments (ground seven); and failed to sufficiently move for a judgment of acquittal (ground eight). Id. at 44-56, 58-61. Jackson also alleged the prosecutor's improper comment on his right against self-incrimination resulted in an unfair trial (ground six). Id. at 57. On June 17, 2010, the State filed a written response to Jackson's Rule 3.850 Motion. Id. at 129-33. On June 30, 2010, the circuit court adopted the State's response and summarily denied Jackson's Rule 3.850 Motion. Id. at 128. The First DCA per curiam affirmed the denial of relief without a written opinion on October 13, 2010, id. at 212; denied Jackson's motion for rehearing on January 12, 2011, id. at 219; and issued the mandate on January 28, 2011, id. at 221.

On July 17, 2011, Jackson also filed a pro se state petition for writ of habeas corpus raising five grounds of ineffective assistance of appellate counsel. Id. at 246-78. The First DCA denied the petition on the merits on August 31, 2011. Id. at 307.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Jackson's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As

explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

8

> conclusion in the first instance.'"[2] <u>Titlow</u>, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §
2254 habeas action in federal court, a petitioner must exhaust all state court
remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.
§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly
present[]" every issue raised in his federal petition to the state's highest court,
either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346,
351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state
prisoners must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's established
appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> "'"opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights.'" <u>Duncan v.</u>
> <u>Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan</u>

10

> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

11

> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

12

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

13

## C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

14

trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct.
2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at

697.

Claims of ineffective assistance of appellate counsel are governed by the

same standards applied to trial counsel under <u>Strickland</u>. <u>See</u> <u>Tuomi v. Sec'y,</u>

<u>Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Philmore v. McNeil</u>, 575

F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we
> are mindful that "the Sixth Amendment does not
> require appellate advocates to raise every non-
> frivolous issue." <u>Id.</u> at 1130-31.[6] Rather, an effective
> attorney will weed out weaker arguments, even

---

[6] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

> though they may have merit. <u>See</u> <u>id.</u> at 1131. In order
> to establish prejudice, we must first review the merits
> of the omitted claim. <u>See</u> <u>id.</u> at 1132. Counsel's
> performance will be deemed prejudicial if we find that
> "the neglected claim would have a reasonable
> probability of success on appeal." <u>Id.</u>

<u>Philmore</u>, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. <u>Id.</u> at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct.
> at 788. But "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." <u>Id.</u> (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> <u>Strickland</u> standard was incorrect but whether that
> determination was unreasonable - a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Jackson alleges the trial court deprived him of due process and a fair trial when it erroneously instructed the jury on constructive possession. Petition at 8. Jackson contends the instruction allowed the jury to find he constructively possessed cocaine solely based on his joint occupation of the residence where law enforcement officers found the cocaine. Id. Jackson also argues that to the extent the Court finds he has not exhausted the claim, it should excuse his failure to exhaust because trial counsel did not object to the instruction. Id. at 9. Jackson raised a substantially similar argument on direct appeal, Doc. 9-3 at 371-76; the State filed an answer brief, id. at 418-23; and

the First DCA per curiam affirmed Jackson's convictions without a written opinion, Doc. 9-4 at 11.

Respondents argue that Jackson failed to exhaust state remedies as to this claim, and, as such, the claim is procedurally defaulted. Response at 10-12. They contend Jackson did not object to the instruction during trial; therefore, the First DCA could address the issue only as a claim of fundamental error, which, according to Respondents, does not raise a federal claim. Id. at 12-14. In his Reply, Jackson asserts he raises a federal claim, and that counsel was ineffective when he did not preserve the issue for appellate review. Reply at 2-5.

Upon review of the record, the Court concludes that Jackson has not exhausted this claim, and that it is procedurally barred. In his initial brief, Jackson asserted that the trial court fundamentally erred when it instructed the jury on constructive possession and argued the instruction did not correctly convey state law to the jury. Doc. 9-3 at 371-76. "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1296 (11th Cir. 2017). Jackson did not alert the state court to the federal nature of his claim. Therefore, to the extent Jackson now raises a due process claim, the Court finds he failed to

18

fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Further, the Court finds that Jackson has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, the claim is procedurally barred.

Nevertheless, even if Jackson fairly presented a federal claim on direct appeal, he is still not entitled to relief. In its appellate brief, the State addressed the claim on the merits, Doc. 9-3 at 418-23; therefore, the appellate court may have affirmed Jackson's convictions based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Jackson is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's claim is without merit. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." <u>Jones v. Kemp</u>, 794 F.2d 1536, 1540 (11th Cir. 1986). On federal habeas review, to establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)). "It is not sufficient that the instruction was 'undesirable, erroneous, or even 'universally condemned.'" <u>Id.</u> (quoting <u>Henderson</u>, 431 U.S. at 154).

Here, Jackson challenges the following instruction:

> <u>Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. In that case, each of those persons is considered to be in possession of that article.</u>
>
> If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.
>
> If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

Doc. 9-1 at 96 (emphasis added). Under Florida law, if contraband is found in jointly possessed premises "knowledge of the contraband's presence and the

ability to control it will not be inferred from the ownership but must be established by independent proof." <u>Mitchell v. State</u>, 958 So. 2d 496, 500 (Fla. 4th DCA 2007). "Such proof may consist of evidence establishing actual knowledge of the presence of the contraband in the place where it is found, or circumstantial evidence from which a jury might properly infer the accused had knowledge of the presence of the contraband." <u>Robinson v. State</u>, 936 So. 2d 1164, 1167 (Fla. 1st DCA 2006) (citation omitted).

Here, the trial court used the standard jury instruction. Doc. 9-3 at 420; <u>see</u> <u>Mitchell</u>, 958 So. 2d at 498-99. However, even assuming the instruction was confusing, sufficient independent proof established Jackson's knowledge of the cocaine and his ability to control it. Officers initially surveilled the residence, which they believed to be a location for drug trafficking, and saw Jackson visit the residence on numerous occasions. Doc. 9-2 at 134-35. When they executed the search warrant, officers apprehended Jackson as he exited the kitchen door. <u>Id.</u> at 144, 238. They discovered cocaine on the stove in plain view and in a cabinet drawer. <u>Id.</u> at 145-46. A digital scale with cocaine residue was located on the kitchen counter, and a beaker and baking soda were found inside the cabinets. <u>Id.</u> at 146, 148. Some of the cocaine was located inside of a white plastic CVS bag. <u>Id.</u> at 207. A Florida Department of Law Enforcement

analyst matched Jackson's fingerprint to a fingerprint discovered on the inside of the CVS bag. Doc. 9-3 at 13-14, 16.

Additionally, Edward Marshal testified that Jackson initially approached him about selling cocaine out of the residence.[7] Doc. 9-2 at 282. Jackson supplied Marshal with cocaine to sell, and Marshal would receive a percentage of the profit from selling the cocaine. Id. at 282-83, 288. Marshal testified he witnessed Jackson make approximately fifty transactions. Id. at 291-92. Tayrell Jenkins also testified to purchasing cocaine from Jackson. Id. at 389, 412. Given this evidence, the State presented sufficient independent proof from which the jury could conclude Jackson knew of and had the ability to control the cocaine. Therefore, the instruction did not render the trial fundamentally unfair, and Jackson is not entitled to federal habeas relief on ground one.

### B. Ground Two

As ground two, Jackson alleges that the search warrant affidavit for the residence was facially insufficient, and the trial court erred when it did not suppress the evidence seized as a result of the search warrant. Petition at 12.

---

[7] Notably, Marshal admitted to living in the residence. Doc. 9-2 at 279-80. Marshal paid for the electricity and water; Jackson would pay for half of the rent. Id. at 281. However, he testified Jackson did not live in the residence. Id. at 301.

Jackson contends the affidavit "failed to state or establish the reliability of the [confidential informant], failed to state that the [confidential informant] was searched upon returning to the prearranged location, and failed to state or establish that upon exiting the premises, the [confidential informant] was continuously observed until the [confidential informant] delivered the controlled substance." Id. According to Jackson, the trial court should have granted the motion to suppress based on these insufficiencies. Id. Jackson also contends that, to the extent the Court determines he did not exhaust the claim, it should excuse his failure to exhaust because counsel was ineffective when he failed to preserve the claim for direct appeal, or alternatively appellate counsel was ineffective when she did not properly present the claim on direct appeal. Id. at 13-14.

Respondents contend that Jackson's Fourth Amendment claim is barred because he had a full and fair opportunity to litigate it in state court. Response at 17. In the alternative, they argue Jackson has failed to exhaust state remedies, and his claim is procedurally defaulted. Id. at 21-23. According to Respondents, Jackson did not assert the same grounds for suppression in the trial court as he asserted on direct appeal. Id. at 18. In his Reply, Jackson

argues the Court should excuse his failure to exhaust under <u>Martinez</u>. Reply at 5.

Jackson is not entitled to federal habeas relief on the Fourth Amendment claim asserted in ground two. The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976). The Eleventh Circuit has explained that:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, <u>Stone v. Powell</u> bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

<u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1288 (11th Cir. 2008) (quoting <u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978)).

The laws and criminal rules of the state of Florida provide a full and fair opportunity to litigate a Fourth Amendment claim. <u>See</u> Fla. R. Crim. P. 3.190(g). Jackson availed himself of this opportunity when he filed a Motion to Suppress, arguing in relevant part that the search warrant was facially insufficient. Doc. 9-1 at 85-90. The circuit court held a hearing, counsel

24

presented the issue to the appellate court for review, and the appellate court issued a ruling. Docs. 9-1 at 147-93; 9-3 at 368-71; 9-4 at 11. This Court cannot review the Fourth Amendment claim included in ground two because Jackson had a full and fair opportunity to litigate this Fourth Amendment challenge before the state courts. See Stone, 428 U.S. at 494; Lawhorn, 519 F.3d at 1288. Therefore, Jackson is not entitled to federal habeas relief on ground two.

### C. Ground Three

Next, Jackson contends appellate counsel was ineffective when she failed to argue on direct appeal that the prosecutor shifted the burden of proof and improperly commented on Jackson's right against self-incrimination. Petition at 16. Jackson also argues that appellate counsel was ineffective when she failed to argue on direct appeal that the trial court erred by refusing to require the disclosure of the confidential informant's identity, as well as the date and time of the controlled buy. Id. at 17. Jackson raised these claims as grounds three and five of his state petition for writ of habeas corpus, Doc. 9-4 at 265-72, 276-78; and the First DCA per curiam denied Jackson's petition on the merits, id. at 307.

As there is a qualifying state court decision, the Court will address the claims in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Jackson is not entitled to relief on the basis of these claims.

Even assuming the appellate court's adjudications of the claims are not entitled to deference, Jackson's claims are without merit. Jackson challenges the following comment:

> And when you consider the evidence as a whole it tells you one thing, it speaks the truth about one thing and one thing alone, this defendant Terrence Jackson was trafficking in cocaine and was conspiring and confederating [with] Mr. Edward Marshal with Tayrell Jenkins and with Leroy Cooper to sell drugs here in Jacksonville. <u>And on June 23rd, 2006, he was caught red-handed and he left behind the one piece of evidence that will not lie, that has no interest, and that cannot change his testimony in any way, shape or form.</u> That fingerprint from those red hands.

Doc. 9-3 at 100 (emphasis added). Counsel objected and moved for a mistrial, arguing the prosecutor improperly commented on Jackson's right against self-incrimination. <u>Id.</u> at 101. The State responded that the comment referred to

the fingerprint. Id. at 101-102. The trial court denied counsel's motion for a mistrial, determining that the prosecutor did not comment on Jackson's failure to testify. Id. at 102.

The Court finds appellate counsel was not ineffective when she failed to raise the issue on direct appeal. The comment in context, while perhaps confusing given that Jackson did not testify, in no way shifted the burden of proof to him. The argument simply directed the jury to the importance of the fingerprint found inside the CVS bag atop of which officers discovered cocaine. Id. at 100. In other words, in making the comment, the prosecutor did not shift the burden of proof to the defense, but only conveyed the significance of the fingerprint evidence to the jury. Id.

Even assuming the prosecutor made an improper comment, Jackson cannot demonstrate it affected the jury's verdict. After the trial court denied trial counsel's motion for mistrial, the prosecutor clarified his comment for the jury by explaining that the fingerprint was "the one piece of evidence that cannot change, that has no interest . . . . Physical evidence does not lie." Id. at 103 (emphasis added). Further, the jury instructions included the following language:

> To overcome the defendants' presumption of
> innocence the State has the burden of proving the

> crime with which the defendants are charged was
> committed and the defendants are the people who
> committed the crimes. The defendants are not
> required to present evidence or prove anything

Doc. 9-1 at 101. The trial court also included an instruction explaining

Jackson's right not to testify at trial:

> The defendant exercised a fundamental right by
> choosing not to be a witness in this case. You must not
> view this as an admission of guilt or be influenced in
> any way by his decision. No juror should ever be
> concerned that the defendant did or did not take the
> witness stand to give testimony in the case.

Id. at 104. Such instructions cured any prejudice from the prosecutor's

comment because a jury is presumed to follow jury instructions. See United

States v. Tampas, 493 F.3d 1291, 1302 (11th Cir. 2007) ("Even if a prosecutor's

remark is prejudicial, it may be harmless if a curative instruction is given.").

Therefore, Jackson's appellate counsel was not ineffective for failing to raise a

meritless issue on appeal. See Shere v. Sec'y, Fla. Dep't of Corr., 537 F.3d 1304,

1311 (11th Cir. 2008).

Appellate counsel also was not ineffective when she failed to argue on

direct appeal that the trial court erred by refusing to disclose the confidential

informant's identity or the details of the controlled buy. The government has a

limited privilege to withhold from disclosure the identities of confidential

28

informants. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id.</u> at 60-61.

Florida law does not require the State to disclose the identity of a confidential informant who only provides probable cause for a search. <u>State v. Chamblin</u>, 418 So. 2d 1152, 1154 (Fla. 1st DCA 1982). A motion to disclose the confidential informant's identity "must show that the informant's testimony is relevant and material to the establishment of the defense which the defendant has or proposes to present." <u>Id.</u> at 1155. To determine the necessity of such disclosure, a court will consider "whether the informant was an active participant in the offense, [the] possible significance of the informant's testimony, whether it is necessary for the prosecutor to refer to the informant in the presentation of his case, and whether there is independent evidence of the accused's guilt." <u>Id.</u>

Here, the State did not charge Jackson with any criminal activity arising from the controlled buy involving the confidential informant. Doc. 9-1 at 152. As represented by the State, the confidential informant was not present during

the execution of the search warrant, and neither the controlled buy nor the confidential informant was a feature of the trial. Docs. 9-1 at 152; 9-2; 9-3 at 1-144. Nothing in the record supports a finding that disclosure of the information was necessary to establish a defense at trial. Doc. 9-1 at 152-55. As such, the trial court did not err when it denied trial counsel's motion, and appellate counsel was not ineffective for failing to raise a meritless issue on appeal. See Shere, 537 F.3d at 1311. Accordingly, Jackson is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, Jackson alleges counsel was ineffective when he did not object to prosecutorial misconduct and when he failed to adequately cross-examine co-defendant Edward Marshal. Petition at 20. According to Jackson, with the prosecutor's knowledge, Marshal testified falsely about the terms of his plea agreement. Id. Specifically, Jackson asserts that, although Marshal testified he could receive no less than a fifteen-year term of imprisonment, he knew that he could receive a sentence less than fifteen years in prison if the State waived the minimum mandatory sentence. Id. at 21. He asserts Marshal also testified that the trial judge would determine his sentence even though Marshal and the prosecutor knew the State could waive the minimum

mandatory sentence. Id. Further, Jackson contends Marshal testified that he did not know about the evidence against him, and he met with his attorney on only three occasions. Id. at 22. However, in his plea agreement, Marshal verified that his attorney reviewed the evidence with him and met with him on numerous occasions. Id. at 23. Jackson admits he has not exhausted his state remedies as to these claims; however, he asserts that he did not know about the plea agreement's contents until 2018, when he received a copy of the agreement in response to a public records request. Id. at 24. He contends counsel also was ineffective for not showing him the plea agreement during trial. Id.

Respondents argue Jackson failed to exhaust state remedies as to these claims, and his claims are procedurally defaulted. Response at 25. According to Respondents, Jackson did not present these claims to the state court, and he cannot now present them in a Rule 3.850 Motion because it would be untimely. Id. at 25-26. Respondents also argue Jackson does not meet the Martinez standard because he cannot establish that "an objective factor external to his defense impeded his ability to assert his claims in the state postconviction court," and his claims are not substantial. Id. at 26-27. The record before the Court establishes that these ineffectiveness claims are

procedurally barred since Jackson failed to raise the claims in a procedurally correct manner. Jackson has not shown either cause excusing the default or actual prejudice resulting from the bar.[8] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Jackson's claims are not procedurally barred, Jackson is not entitled to federal habeas relief. Counsel was not ineffective when he failed to object to Marshal's testimony about the sentencing range pursuant to the plea agreement and the trial judge's discretion in imposing the sentence. During trial, Marshal testified that he could receive between a fifteen-year minimum mandatory term of imprisonment and a thirty-year term of imprisonment. Doc. 9-2 at 276. Marshal represented that a judge would "ultimately determine" his sentence. Id. Florida Statutes section 893.135(1)(b)c provides that any person who traffics in 400 grams or more of cocaine shall receive a fifteen-year mandatory minimum term of imprisonment. While "the state attorney may move the sentencing court to reduce or suspend the

_____

[8] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14. As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit. Therefore, Jackson has not shown that he can satisfy an exception to the bar.

sentence of any person . . . who provides substantial assistance," the judge retains the discretion to reduce or suspend the sentence if she finds that person rendered such substantial assistance, Fla. Stat. § 893.135(4). Moreover, Marshal's plea agreement confirmed that he did not receive any promises from the State about his sentence, and that he had not been offered any hope or reward of better treatment. Doc. 10-1 at 8-9. Therefore, Marshal did not testify falsely during trial. For the same reasons, counsel was not ineffective for failing to cross-examine him and confront him with the plea agreement on this issue. Counsel was not ineffective for failing to raise a meritless issue.

Jackson also contends counsel should have objected when Marshal indicated he had no knowledge of the evidence against him and did not meet with his attorney. To the extent Jackson claims Marshal attempted to minimize his involvement by testifying in such a manner, the Court finds counsel's failure to object did not prejudice the defense. The jury was presented with significant evidence of Marshal's motive to testify against Jackson and to minimize his involvement in the conspiracy. On cross-examination, Marshal admitted to hoping the trial judge would consider his willingness to testify and impose a reduced sentence. Doc. 9-2 at 305-07. Marshal also testified that he entered a guilty plea because he committed the crimes, and he did not think

33

he could "beat the case" before he entered his plea. Id. at 308-09, 338-39. Counsel also established on cross-examination that Marshal lived at the residence where officers discovered the cocaine. Id. at 309-11. Based on such testimony, the Court finds that counsel's failure to object to Marshal's testimony about his knowledge of what evidence the State had gathered or the extent he had met with his attorney did not prejudice the defense. As such, relief on the claim in ground four is due to be denied. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

### E. Ground Five

As ground five, Jackson adopts every claim of ineffective assistance of counsel raised in his Rule 3.850 Motion. Petition at 26. In ground one of his Rule 3.850 Motion, Jackson alleged counsel was ineffective when he did not sufficiently object to the search warrant affidavit. Doc. 9-4 at 44. According to Jackson, counsel argued the search warrant did not establish the confidential informant's reliability or basis for knowledge. Id. at 45. However, Jackson contended that a controlled buy provided the basis for the search warrant. Id. at 44. According to Jackson, counsel should have argued the affidavit was

34

insufficient because it did not state that law enforcement constantly surveilled the confidential informant and searched the confidential informant after the controlled buy. Id. at 44-45. Jackson also contended officers did not recover the currency they gave to the confidential informant. Id. at 45. In denying relief on this claim, the circuit court adopted the State's written response, which explained:

> The Defendant claims his trial counsel was ineffective for failing to properly argue the sufficiency of the probable cause affidavit at a suppression hearing. Specifically, the Defendant claims trial counsel failed to argue that the controlled buy was not properly supervised, and thus was an insufficient basis for establishing probable cause. However, Defendant's trial counsel filed a legally sufficient Motion to Suppress and argued the motion to the Court, which properly preserved the issue for appeal. Furthermore, the controlled buy was in fact properly and sufficiently supervised. See Clark v. State, 635 So. 2d 1010 (Fla. 1st DCA 1994) (Attachment A).[9] If the issue had merit and would have affected the outcome of the Defendant's case, it would have been addressed on direct appeal.

Id. at 129-30. The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

---

[9] The State included the Clark opinion as "Attachment A."

To the extent that the First DCA denied this claim on the merits, [10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. "If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (quotations and citation omitted). When sufficient independent corroboration of an informant's information exists, there is no need to establish the veracity of the informant. Id. Notably, a properly executed

---

[10] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

controlled buy may provide the sufficient independent corroboration. See United States v. Bramlett, 232 F. App'x 940, 943 (11th Cir. 2007) ("Furthermore, without the statements in the affidavit regarding the CI's past reliability, there was a monitored controlled buy and 'sufficient independent corroboration of [the] informant's information,' and, thus, no need to prove the CI's reliability.") (citing Martin, 297 F.3d at 1314).

Here, Jackson has not established that the search warrant affidavit was legally insufficient given that it reflected that the officers engaged in a properly executed controlled buy using the informant. An officer searched the informant before the informant entered the residence. Doc. 9-3 at 342. The officer determined that the informant did not possess any controlled substances and monitored the informant entering and exiting the premises. Id. The informant met with the officer at a prearranged location "immediately" after the controlled buy. Id. at 343. The informant provided powder cocaine to the officer, and told the officer that Jackson gave him the cocaine inside the residence and additional quantities of cocaine were inside the residence. Id. Therefore, counsel was not ineffective for failing to object to the search warrant on the proposed basis. Accordingly, Jackson is not entitled to federal habeas relief on this claim.

In ground two of his Rule 3.850 Motion, Jackson asserted counsel was ineffective when he did not object to the State's violation of an "oral motion in limine." Doc. 9-4 at 46. According to Jackson, the trial court granted an oral motion in limine prohibiting the State's witnesses from referencing the confidential informant. Id. Jackson contended that a State witness, Detective Richard Hughey, testified that officers obtained information about drug activity in the residence from a confidential informant. Id. According to Jackson, counsel should have objected to Detective Hughey's testimony. Id. at 47-48. The circuit court denied relief. Id. at 128. In doing so, the circuit court adopted the State's written response, which explained:

> The Defendant claims that the State violated a motion in limine when it elicited testimony from a witness regarding a confidential informant. The Defendant further claims that his trial counsel was ineffective for failing to object to this testimony, and thus failing to re-open the Defendant's motion to disclose the confidential informant. However, there was no pre-trial motion in limine filed or argued on the issue, therefore the Defendant's claim is without merit. Furthermore, the witness statement at issue was not related to the referenced side-bar conference, which was concerned with prohibiting specific testimony about the controlled buy, not that one had occurred. In addition, any error that might have occurred was not fundamental, and did not prejudice the Defendant or in any way affect the outcome of the Defendant's case.

Id. at 130. The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. The record shows during the sidebar conference, codefendant's counsel sought to cross-examine State witnesses about the controlled buy and the codefendant's lack of involvement in the controlled buy. Doc. 9-2 at 110. The parties agreed that if codefendant's counsel proceeded with that line of questioning, the trial court would excuse Jackson's jury. Id. at 111.

On direct examination, Detective Hughey made a brief reference to the confidential informant:

> Q    How did you begin your investigation and surveillance of that particular residence?
>
> A    It was brought to our attention by a confidential informant that narcotics was being distributed out of that address.

Id. at 198. Detective Hughey did not refer again to the confidential informant. Id. at 196-233. The Court finds Detective Hughey's statement did not violate the parties' sidebar agreement. Moreover, Detective Hughey made only a brief reference to the confidential informant, and the State did not present any additional information about the controlled buy or the confidential informant. Therefore, even assuming counsel should have objected to Detective Hughey's comment, his performance did not prejudice the defense. Accordingly, Jackson is not entitled to federal habeas relief on this claim.

In ground three of his Rule 3.850 Motion, Jackson argued counsel was ineffective when he failed to investigate and subpoena a State witness, Erica Brown. Petition at 49. Jackson alleges Brown provided a false, notarized statement that she gave Jackson a key to the residence where officers found the cocaine. Id. Jackson argues that Brown's testimony would have revealed Marshal's "plan to implicate the defendant at any cost and remove liability

40

from himself."[11] Id. at 50. According to Jackson, he requested counsel call Brown as a witness, but counsel did not do so or provide Jackson with proof that he attempted to contact Brown. Id. at 49-51. In denying relief on this claim, the circuit court adopted the State's written response, which explained:

> The Defendant claims his trial counsel failed to properly investigate or subpoena a State's witness, Erica Brown. The Defendant's claim is without merit. Both the State and the Defendant's trial counsel made every reasonable effort to contact the witness and subpoena her for trial.

Id. at 130-31 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

---

[11] Marshal rented the residence in Brown's name because he did not have a job. Doc. 9-2 at 280.

presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the postconviction court's conclusion is fully supported by the record. On multiple occasions, the parties discussed their attempts to contact Brown. At a pretrial hearing on May 3, 2007, counsel stated he previously asked the prosecutor for a more definite address for Brown; however, the prosecutor "did not know her whereabouts." Doc. 9-1 at 189-90. Counsel renewed his request to the prosecutor, who confirmed he could not find her. Id. at 190-91. During trial, when the trial judge questioned Jackson about whether he wanted to call additional witnesses, counsel confirmed Brown "was not located by either side" and unavailable as a witness. Doc. 9-3 at 49, 51. Therefore, counsel was not deficient because he attempted to locate Brown, but she was unavailable as a witness. See Williamson v. Moore, 221 F.3d 1177 (11th Cir. 2000) ("Counsel cannot be said to be ineffective for failing to call an unavailable witness."). Accordingly, Jackson is not entitled to federal habeas relief on ground three.

In ground four of his Rule 3.850 Motion, Jackson alleged counsel was ineffective when he did not object to the jury instructions on constructive

possession or request special instructions. Doc. 9-4 at 52. Jackson contended counsel failed to preserve the issue for appellate review. Id. at 52-54. The circuit court denied relief, adopting the State's written response, which explained:

> The Defendant claims his trial counsel put forth ineffective assistance when he failed to object to erroneous jury instructions and failed to request special instructions on the law. The Defendant's claim is without legal merit and would not have affected the final outcome of the case.

Id. at 131. The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. As discussed in ground one, Jackson has not shown that the instruction rendered his trial fundamentally unfair. Therefore, even if counsel was deficient when he did not object to the instruction, his performance did not result in prejudice. The Court also notes that to the extent Jackson alleges counsel should have objected to the instruction and requested a special instruction pursuant to Mitchell,[12] he still is not entitled to relief. On May 30, 2007, the Fourth DCA issued the opinion in Mitchell, 958 So. 2d 496. A jury found Jackson guilty of counts one and two on May 16, 2007. Doc. 9-1 at 110-11. "Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (alteration and quotations omitted). This is especially true in the context of Florida law, where standard instructions are presumed correct and are preferred over special instructions. Gutierrez v.

---

[12] In Mitchell, the Fourth DCA determined the trial court erred when it refused to give a special jury instruction on the joint possession of a premise, and it recommended the Criminal Standard Jury Instruction Committee "review the standard instruction for modification in cases where an issue at trial involves the joint possession of the premises where contraband is found." 958 So. 2d at 501.

<u>State</u>, 177 So. 3d 226, 230 (Fla. 2015). Accordingly, counsel was not ineffective when he did not object to the instruction or request a special instruction. Therefore, Jackson is not entitled to federal habeas relief on this claim.

In ground five of his Rule 3.850 Motion, Jackson asserted counsel was ineffective when he failed to "fully advise" Jackson about his right to testify. Doc. 9-4 at 55. According to Jackson, counsel advised him that "it would not be in his best interest to take the stand in his own defense due to the fact that [Jackson] is a convicted felon." <u>Id.</u> Jackson alleged counsel dissuaded him from testifying at trial and never completely advised him of his right to testify. <u>Id.</u> at 55-56. In denying relief on this claim, the circuit court adopted the State's written response, which explained:

> The Defendant claims his trial counsel failed to fully advise him of his constitutional right to testify. However, according to the Defendant's own Motion for Post-Conviction Relief, trial counsel advised the Defendant of his right to testify, and recommended that the Defendant remain silent. Furthermore, the Defendant was fully advised of his right to testify by the Court and knowingly and voluntarily waived that right.

<u>Id.</u> at 131 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. <u>Id.</u> at 212.

45

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992). If counsel believes a defendant should not testify, "counsel may, and indeed should, advise the client in the strongest possible terms not to testify." Id.

Here, Jackson does not suggest counsel forced him not to testify or misadvised him on a key element of his right to testify. Rather, Jackson alleges counsel advised him not to testify because of his prior convictions. Revelation of prior convictions is a legitimate tactical reason to advise a defendant not to testify. Id. at 1533 n.9. Further, the trial court engaged in an extensive colloquy with Jackson about his right to testify, including the circumstances under which the jury would learn about the nature of his prior convictions. Doc. 9-3 at 43-45. The trial court further explained: "The decision to take the stand is yours and yours alone to make, although you should make it based on legal advice given to you by your attorney." Id. at 45. On this record, the Court finds Jackson received appropriate advice on his right to testify from the trial court, and counsel was not ineffective for advising Jackson not to testify at trial. Therefore, Jackson is not entitled to federal habeas relief on this claim.

In ground six of his Rule 3.850 Motion, Jackson alleged he was deprived of a fair trial when the prosecutor commented on his right against self-incrimination. Doc. 9-4 at 57. In denying relief, the circuit court adopted the State's written response, which explained:

> The Defendant claims he was denied a fair trial when the State, during its closing argument, made an impermissible comment on the Defendant's right to remain silent. However, the Defendant's trial counsel

47

> properly objected to the statement and moved for a
> mistrial, which was denied by the Court. This issue
> was thus properly preserved. If the issue had merit, it
> would have been addressed on direct appeal.

Id. at 131-32 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's claim is without merit. As determined in ground three, the prosecutor did not shift the burden of proof or improperly comment on Jackson's right not to testify. Therefore, the comment did not deprive Jackson of a fair trial. Accordingly, Jackson is not entitled to federal habeas relief on this claim.

48

In ground seven of his Rule 3.850 Motion, Jackson contended counsel was ineffective when he did not renew his objection during closing arguments to the prosecutor's comment on facts not in evidence. Doc. 9-4 at 58. Jackson further asserted counsel should have moved for mistrial based on the prosecutor's comment. Id. at 58-59. The circuit court denied relief on this claim. Id. at 128. In doing so, the circuit court adopted the State's written response, which explained:

> The Defendant claims ineffective assistance of counsel, alleging that his trial counsel failed to object to the State's improper comments regarding facts not in evidence during its closing. The Defendant also claims that trial counsel improperly failed to move for a mistrial based on these comments by the State. However, the Defendant's trial counsel did in fact object to the State's comments as to facts not in evidence, thus preserving the issue for appellate review. If the issue had merit, it would have been addressed on direct appeal. Furthermore, the State's comments during its closing argument were fully supported by the testimony. As a result, any failure of the Defendant's trial counsel to object to those comments would not have affected the outcome of the Defendant's case.

Id. at 132 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the postconviction court's conclusion is supported by the record. Jackson challenges the following comment:

> Now remember, the first count of the information these are the elements that we must prove, the defendant knowingly sold, purchased, manufactured, delivered, brought into Florida or possessed a certain substance. And we know he possessed it, he's in the kitchen, he's breaking down the cocaine, he's got his fingerprint on the packaging, he's in possession.

Doc. 9-3 at 89 (emphasis added). The prosecutor's statement was a permissible comment on an inference that the jury could draw from the evidence. See United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). Officers detained Jackson as he exited the door of the residence leading into the kitchen. Doc. 9-

2 at 144, 238. In the kitchen, on the stove, officers discovered money and cocaine. Id. at 145. A scale with cocaine residue also was on the kitchen counter; and baking soda, an agent commonly used to convert powder cocaine into crack cocaine, and a beaker were in the kitchen cabinets. Id. at 146, 148. Some of the cocaine was located on top of a CVS bag. Id. at 207. And Jackson's fingerprint was discovered inside the CVS bag. Doc. 9-3 at 13-14, 16. Further, counsel objected to the comment, and in response, the trial court cautioned the jurors that they were to rely on their memories of the evidence and that closing arguments do not constitute evidence. Id. at 89. On this record, and considering the trial court's issuance of a curative instruction, counsel had no basis to move for a mistrial. Therefore, Jackson is not entitled to federal habeas relief on this claim.

In ground eight of his Rule 3.850 Motion, Jackson alleged counsel was ineffective when he failed to sufficiently move for a judgment of acquittal. Doc. 9-4 at 60-61. According to Jackson, counsel should have argued that the State did not demonstrate Jackson controlled the cocaine found in the residence or that he knew of its presence. Id. at 60. Jackson claimed his joint possession of the residence by itself could not establish his control over or knowledge of the

cocaine. Id. at 60-61. In denying relief on this claim, the circuit court adopted the State's written response, which explained:

> The Defendant claims his trial counsel failed to properly move for a Judgment of Acquittal. However, the record shows that trial counsel did move for a Judgment of Acquittal, thus preserving the issue for appellate review. If the Defendant's claim had merit it would have been addressed on direct appeal.

Id. at 132 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jackson is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Jackson's ineffectiveness claim is without merit because the record fully supports the postconviction court's conclusion. In his motion

for judgment of acquittal, counsel argued the State did not present a prima facie case of trafficking in cocaine because several individuals had access to the residence where officers found the cocaine. Doc. 9-3 at 51. Counsel also argued that Jackson did not own or occupy the residence. Id. Counsel therefore argued the State did not establish Jackson had constructive possession of the cocaine, and cited to Person v. State, 950 So. 2d 1270 (Fla. 2d DCA 2007), in support of his argument. Id. On this record, Jackson has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Jackson has not shown any resulting prejudice. Thus, his ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Jackson is not entitled to federal habeas relief on this claim.

### F. Ground Six

Jackson alleges his HFO sentence is illegal because the jury did not find the protection of the public necessitated an extended term of imprisonment. Petition at 30. Jackson raised a substantially similar claim on direct appeal, Doc. 9-3 at 389-96; the State filed an answer brief, Docs. 9-3 at 429; 9-4 at 1-8;

and the First DCA per curiam affirmed Jackson's convictions and sentences without a written opinion, Doc. 9-4 at 11.

In its appellate brief, the State addressed the claim on the merits, Docs. 9-3 at 429; 9-4 at 1-8; therefore, the appellate court may have affirmed Jackson's convictions and sentences based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Jackson is not entitled to relief on the basis of this claim.

Even assuming the state court's adjudication of the claim is not entitled to deference, Jackson's claim is nevertheless without merit. Florida Statutes section 775.084(3)(a)6 provides if a state attorney pursues an HFO sanction and the trial court determines a defendant meets the criteria, it must sentence him to an enhanced sentence "unless the court finds that such sentence is not necessary for the protection of the public." Here, the trial court did not need to

54

make such a finding because it sentenced Jackson as an HFO. To the extent Jackson argues Florida's HFO statute violates <u>Apprendi</u>, his claim is without merit. Florida courts have repeatedly found that the HFO statute does not violate <u>Apprendi</u>. <u>See, e.g.</u>, <u>Gudinas v. State</u>, 879 So. 2d 616, 618 (Fla. 2004); <u>Dinkens v. State</u>, 976 So. 2d 660, 662 (Fla. 1st DCA 2008). Accordingly, Jackson is not entitled to federal habeas relief on ground six.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Jackson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jackson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

55

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Jackson appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of June, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-9

C:      Terrence Jackson, #125239
        Counsel of record